UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                    Plaintiff,

                  v.

DONALD McKINNEY,

                                  Defendant.
_____

DECISION AND ORDER

18-CR-6035L

       Defendant Donald McKinney ("McKinney"), through counsel, has filed a motion (Dkt. #34) which is styled as an emergency motion to modify McKinney's sentence to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A). The Government has filed a response (Dkt. #37) opposing the motion for release and the Probation Office from the Western District of New York has filed a Report (Dkt. #36) concerning McKinney, his care at the Devens Federal Medical Center ("Devens"), where McKinney is housed, as well as information concerning practice and procedures at Devens.

       In addition, the defendant filed a 38-page Reply (Dkt. #38) and a second reply (Dkt. #40). Both the Government (Dkt. #39) and the defendant (Dkt. #41) also filed letter briefs in response to the Court's email of May 21, 2020 concerning possible alternate judicial remedies (Dkt. #41).

       The basis for the motion is the COVID-19 virus which has caused the world-wide pandemic resulting in infection and death of thousands. McKinney asserts that his preexisting medical conditions make him especially susceptible to contracting the virus, and becoming gravely ill should be become infected.

McKinney pleaded guilty in March 2018 to conspiracy to possess with intent to distribute and distribute 50 grams or more of methamphetamine. On October 10, 2018, this Court sentenced McKinney principally to a term of imprisonment of 120 months and a term of supervised release of five years.

At the Government notes, McKinney has a lengthy criminal record which includes prior felony drug trafficking convictions. Because of that record, under the United States Sentencing Guidelines, McKinney is deemed a career offender with a resulting guideline range of between 262-327 months and a mandatory minimum sentence of 20 years imprisonment. McKinney, however, received a significantly reduced sentence of 120 months based on the cooperation he provided to the Government concerning others. As of June 1, 2020, McKinney has served approximately 18 months of his 120 month sentence.

At the time of his sentencing, McKinney suffered from several illnesses and was confined to a wheelchair. Apparently, he continues confined for the most part to a wheelchair while incarcerated.

McKinney has been designated to serve his sentence at the Devens Federal Medical Center, one of the several hospitals and medical centers run by the Bureau of Prisons ("BOP"). Such facilities are designed to care for and treat federal inmates with various medical issues, diseases and disabilities.

## DISCUSSION

**Exhaustion of Administrative Remedies**

In its initial Response (Dkt. #37) and its subsequent filing (Dkt. #39), the Government asserts that McKinney has not exhausted his administrative remedies. On the contrary, I believe that McKinney has complied with the requirement. McKinney summarizes the requests made for release

(Dkt. #38, pp.9-10). It does appear that McKinney submitted forms that made it quite clear to BOP's officials that he was requesting release to home confinement. As noted in the defense Response (Dkt. #38, p.10), McKinney received a statement from the BOP denying release in a Memo dated April 25, 2020. That denial indicated he would not be eligible for home confinement until 2025 and he was not entitled to COVID release since he had not served enough of his term of imprisonment. In the Court's view, McKinney has sufficiently made his request for home confinement on account of his numerous medical conditions and that request has been denied.

Concerning the medical issues, even the Government acknowledges that McKinney does suffer from several illnesses which make him vulnerable to the COVID-19 virus. (*See* Government's Response, Dkt. #37, p.8). Specifically, the Government concedes that "the defendant does appear to have conditions that elevate his risk of becoming seriously ill from COVID-19 if infected, specifically, COPD, diabetes, and severe obesity." (Dkt. #37, p.8). That is a significant concession. The Probation Report (Dkt. #36) notes that McKinney is classified at the Devens FMC at the highest or most serious medical care level, that is Medical Care Level 4. That means even according to the BOP, McKinney is one of the most severely impaired inmates. The Probation Report notes that McKinney suffers "from a variety of medical ailments and conditions." They include the fact that he previously suffered a stroke, was diagnosed with COPD, has diabetes and is wheelchair bound.

McKinney's original motion (Dkt. #34) sets forth his lengthy list of medical issues. McKinney is now relatively elderly, 55 years old. He suffers from severe chronic obstructive pulmonary disease (COPD), hypertension (high blood pressure), heart disease, including hypercholesterolemia, cardiomegaly, which is indicative of an enlarged heart, and had suffered a prior heart attack. He apparently also has hypertrophic cardiomyopathy, that is thickening of the

3

heart walls, diabetes, and morbid obesity. According to the filing, McKinney takes at least ten medications daily to manage these conditions and regularly uses an inhaler. He receives oxygen at night and at other times as needed.

At sentencing, McKinney was confined to a wheelchair and he remains in a wheelchair and his conditions appear to have worsen while incarcerated at the Devens facility.

The Center for Disease Control ("CDC") has established several groups that face an increased risk of severe illness from COVID-19 because of preexisting conditions. These have been well publicized and they include the elderly, people of any age with chronic lung disease, such as COPD, heart conditions, obesity and kidney disease. The defense suggests that McKinney "checks nearly every box" concerning vulnerable inmates and this Court is inclined to agree.

McKinney's request for release is not just that he fears becoming infected; all inmates are concerned with that. Rather, his concern, a legitimate one I believe, is that if he does contract the disease, because of his established medical conditions, the consequences could be dire indeed.

It is well established that inmates imprisoned are especially susceptible to being exposed to the virus. Although BOP facilities are making steps to deal with the virus, it is virtually impossible to maintain proper social distancing, to require the use of masks, and to eliminate the mingling of inmates.

Although the Government's initial Response (Dkt. #37) set forth an alleged laundry list of steps taken by officials at Devens FMC, it appears that while the motion has been pending, there has been a very dramatic increase in the number of inmates and staff infected there. The Government conceded (Exhibit 37, p.13), that as a May 15, 2020, there were 12 confirmed cases of COVID-19 at FMC Devens. Since this motion has been pending, though, the number of COVID-19 cases at the facility has increased dramatically. As noted in the defense filing of May 31, 2020 (Dkt. #40), when

the motion was filed, Devens was reporting only one confirmed case of COVID-19. As the weeks passed, a number of infected inmates has risen dramatically. According to this filing, Devens is currently reporting 47 active cases and one death. This exponential growth certainly raises significant and legitimate concerns as to whether the BOP at Devens can adequately limit the spread of the virus, especially involving inmates such as McKinney who, according to the BOP's own medical classifications, is at the highest risk, and needs the most care.

Because of all of the above factors, I believe ordering release of McKinney is consistent with both the recently enacted CARES Act [Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, Section 12003(b)(2)] and with the forceful Memorandum issued by the Attorney General of the United States, dated March 26, 2020, directing the BOP to prioritize the use of home confinement during this extraordinary pandemic. In addition to that Memo, the Attorney General issued a subsequent Memo to the BOP directing the BOP to give priority to home confinement to the most vulnerable inmates, especially at three facilities, FCI Oakdale, FCI Danbury and FCI Elkton.

I recognize that McKinney has served less than half of the 120-month term that I imposed originally. If the Court orders release, McKinney will be required to serve the balance of his sentence in home confinement which was his status pending proceedings in the District Court because of his significant, documented medical issues. Because of McKinney's debilitating medical conditions including confinement to a wheelchair, I do not believe he is a danger to the community and that he can be adequately supervised by the Probation Office.

It does appear that McKinney does a have legitimate post-release plan to reside with his wife in Livingston County, New York. His medical needs were adequately addressed at the District Court level and it would seem to be the case now as well.

After considering the applicable factors set forth in 18 U.S.C. § 3553(a), the standards set forth at 18 U.S.C. § 3582(c)(1)(A), and the Policy Statement of the Sentencing Commission set forth at U.S.S.G. § 1B1.13, this Court finds that extraordinary and compelling reasons warrant a reduction in defendant Donald McKinney's sentence and further finds that the administrative exhaustion requirement has been sufficiently satisfied, and I further find that the defendant Donald McKinney is not a significant present danger to the safety of any other person or to the community.

Accordingly, it is hereby ORDERED:

(1) That defendant Donald McKinney's motion (Dkt. #34) for compassionate release is GRANTED.

(2) Defendant Donald McKinney's sentence is hereby reduced to TIME SERVED and he is Ordered to be IMMEDIATELY RELEASED. The Court directs the Bureau of Prisons at FMC Devens to immediately commence the process of releasing the defendant from custody and the United States Attorney's Office is directed to take all steps to communicate and to facilitate that relief.

(3) The remainder the defendant's sentence will be served on home confinement, until further Order of the Court.

(4) The Bureau of Prisons is directed to provide the defendant with funds and costs of transportation, if necessary to defendant's bona fide residence in the Western District of New York, pursuant to 18 U.S.C. § 3624(d).

(5) Following the defendant's release, he must travel directly to his residence in Livingston County, New York, and remain in home confinement and self-quarantine for at least fourteen (14) days after entry to the residence, and must comply with all the rules and regulations promulgated by the State of New York.

(6) Defendant will be monitored on supervised release for five (5) years, or until further Order of the Court.

ALL OF THE ABOVE IS ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
June 4, 2020.